674 S.E.2d 1

**Richard C. RASHID, M.D., Plaintiff Below, Appellant**

v.

**Muhib S. TARAKJI, M.D., Defendant Below, Appellee.**

No. 33596.

Supreme Court of Appeals of West Virginia.

Submitted: April 1, 2008.

Decided: Nov. 5, 2008.

R. Edison Hill, Esq., Hill, Peterson, Carper, Bee, & Deitzler, PLLC, Charleston, for Appellant.

Jeffrey M. Wakefield, Esq., Jaclyn A. Bryk, Esq., Flaherty, Sensabaugh & Bonasso, PLLC, Charleston, for Appellee.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered September 27, 2006. In that order, the circuit court denied a motion to reinstate a legal action filed by the appellant, Richard C. Rashid, M.D., against the appellee, Muhib S. Tarakji, M.D. Dr. Rashid argues that his action was dismissed on July 5, 2001, without prior notice and without an opportunity to be heard as mandated by Rule 41(b) of the West Virginia Rules of Civil Procedure. Conversely, Dr. Tarakji maintains that Dr. Rashid's motion to reinstate was properly denied by the circuit court. Based upon the parties' briefs and arguments in this proceeding, as well as the relevant statutory and case law, we are of the opinion that the circuit court committed reversible error. Accordingly, we reverse the decision below.

## I.

## FACTS

On March 14, 1997, the appellant, Richard C. Rashid, M.D., filed a complaint against the appellee, Muhib S. Tarakji, M.D., in the Circuit Court of Kanawha County. The complaint was filed on Dr. Rashid's behalf by his counsel Bradley Sorrells, Esquire, and Scott Segal, Esquire.

Dr. Rashid's complaint alleged that Dr. Tarakji, an ophthalmologist formerly working as an independent contractor in Dr. Rashid's ophthalmology practice, formed his own medical practice through the use of unauthorized trade secrets misappropriated from Dr. Rashid. Dr. Rashid also alleged several other causes of action including breach of employment contract, fraud, tortious interference, and unjust enrichment.

In addition, Dr. Rashid alleged that Dr. Tarakji's practice was formed and operated in direct violation of a non-competition agreement with Dr. Rashid. On December 8, 1997, Dr. Tarakji filed his answer to the complaint and asserted a counterclaim against Dr. Rashid. On February 2, 1998, Dr. Rashid filed his answer to the counterclaim. On November 30, 1998, and April 10, 2000, Dr. Rashid served nearly identical first and second requests for production of documents to Dr. Tarakji. Dr. Rashid then provided Dr. Tarakji with an open-ended extension to answer the first request on December 1, 1998, and a six-month extension for the second request on April 11, 2000.

Thereafter, according to the circuit court's docket, a notice letter was sent on March 30, 2001, informing Dr. Rashid and Dr. Tarakji, through counsel, that the action would be dismissed unless twenty dollars was remitted to the circuit court by May 1, 2001, pursuant to W.Va.Code § 59–1–11(b).[1] The notice letter further stated that failure to remit the twenty dollars by May 1, 2001, would result in the referral of the case to the circuit court for dismissal pursuant to Rule 41(b) of the West Virginia Rules of Civil Procedure. The legal action was subsequently dismissed by order of July 5, 2001, as a result of Dr. Rashid's failure to remit twenty dollars to the circuit court clerk by May 1, 2001.

On January 28, 2003, Mr. Sorrells, on Dr. Rashid's behalf, requested Dr. Tarakji's tax returns for the years 1995, 1996, and 1997, in order to determine whether to reassert the dismissed claims. Dr. Tarakji's counsel, Jeffrey M. Wakefield, Esquire, responded to Mr. Sorrells by a letter dated January 31, 2003, and informed Mr. Sorrells that the action had been dismissed, and any new lawsuit filed by Dr. Rashid would be barred under the doctrine of *res judicata.* Moreover, Mr. Wakefield included the text of Rule 41(b) with the letter, and informed Mr. Sorrells that the three term limit in which to

---

1. West Virginia Code § 59–1–11(a) provides that: "The clerk of a circuit court shall charge and collect for services rendered by the clerk the following fees which shall be paid in advance by the parties for whom services are to be rendered[. . . .]" This is followed by W.Va.Code § 59–1–11(b), which provides that: "In addition to the foregoing fees, the following fees shall likewise be charged and collected: . . . (11) For additional service (plaintiff or appellant) where any case remains on the docket longer than three years, for each additional year or part year, twenty dollars; . . ."

reinstate the action for "good cause" had lapsed. On March 21, 2005, Dr. Rashid filed a new complaint in the circuit court, which was identical to the complaint he initially filed. Dr. Tarakji filed a motion to dismiss on grounds of *res judicata* after which Mr. Segal, on Dr. Rashid's behalf, agreed to the dismissal of the action. An order reflecting the dismissal was entered on November 30, 2005.

On March 22, 2006, Dr. Rashid, through newly obtained counsel, R. Edison Hill, Esquire, filed a motion to reinstate the original action which had been dismissed by order entered July 5, 2001. Dr. Rashid argued that reinstatement was proper, due to the fact that he was not provided with the notice letter from the circuit clerk assessing the twenty dollar fee, in order to maintain the action on the circuit court's docket. On September 27, 2006, the circuit court denied Dr. Rashid's motion for reinstatement, and this appeal followed.

## II.

### STANDARD OF REVIEW

■ In this case, Dr. Rashid argues that the circuit court erred in denying his motion to reinstate his legal action. When a circuit court dismisses a case in accordance with W.Va. R. Civ. P. 41(b), a motion requesting the court to reinstate the matter, pursuant to Rule 41(b) and W.Va.Code § 56–8–12 (1923),[2] rests in the court's sound discretion. "Traditionally, our scope of review, even where reinstatement is timely sought, is limited. It is only where there is a clear showing of an abuse of discretion that reversal is proper." *Dimon v. Mansy*, 198 W.Va. 40, 46, 479 S.E.2d 339, 345 (1996). Thus,

[a] motion to reinstate a dismissed action under the terms of Code, 56–8–12, is addressed to the sound discretion of the trial court, and, in the absence of a showing of abuse of that discretion, the action of the trial court upon such motion will not be disturbed upon writ of error. *Higgs v. Cunningham*, 71 W.Va. 674, 77 S.E. 273 [(1913)]. Syllabus Point 1, *Murray v. Roberts*, 117 W.Va. 44, 183 S.E. 688 (1936).

Syllabus Point 1, *Covington v. Smith*, 213 W.Va. 309, 582 S.E.2d 756 (2003). *See also* Syllabus Point 4, in part, *White Sulphur Springs, Inc. v. Jarrett*, 124 W.Va. 486, 20 S.E.2d 794 (1942) ("A trial court, upon a motion to reinstate a suit or action, under Code, 56–8–12, is vested with a sound discretion with respect thereto[.]"); Syllabus Point 2, *Higgs v. Cunningham*, 71 W.Va. 674, 77 S.E. 273 (1913) ("Code 1906, ch. 127, sec. 11, does not peremptorily require every dismissal or non-suit to be set aside simply because the court is asked to do so. The court has a sound discretion in the premises."). With these standards in mind, we now consider the parties' arguments.

## III.

### DISCUSSION

■ Dr. Rashid maintains that his counsel did not receive notice prior to the dismissal of his legal action. He argues that in Syllabus Point 2 of *Dimon v. Mansy*, 198 W.Va. 40, 479 S.E.2d 339 (1996), this Court held that a party must be given notice and an opportunity to be heard prior to a dismissal under Rule 41(b) of the West Virginia Rules of Civil Procedure. Dr. Rashid states that the required pre-dismissal notice from the circuit court is essentially a rule to show cause why the matter should not be dismissed and that he should have been heard in regard to that issue.

Dr. Rashid further states that the circuit court ignored the plain mandate of Rule

---

**2.** West Virginia Code § 56–8–12, the precursor to the reinstatement provisions contained in Rule 41(b), instructs that:

Any court may, on motion, reinstate on the trial docket of the court any case dismissed, and set aside any nonsuit that may be entered by reason of the nonappearance of the plaintiff, within three terms after the order of dismissal shall have been made, or the order of nonsuit entered; but any such order of rein-

statement shall not be entered until the accrued costs in such case shall have been paid. *Accord* W. Va. R. Civ. P. 41(b). *See also Arlan's Dept. Store of Huntington, Inc. v. Conaty*, 162 W.Va. 893, 897, 253 S.E.2d 522, 525 (1979) (observing that "[b]ecause these statutory rules were not 'modified, suspended or annulled' by the West Virginia Rules of Civil Procedure, they remain in effect as rules of court").

41(b) by failing to address the requirement of a pre-dismissal notice. As a result of the failure to provide pre-dismissal notice and an opportunity to be heard, Dr. Rashid argues that the July 5, 2001, dismissal order was *void ab initio* and had no legal effect. Dr. Rashid also states that the involuntary dismissal of his case resulted in a failure of process, procedure, and fairness, and that this error was further compounded when the circuit court failed to hold a hearing regarding his motion for reinstatement. He states that a hearing is required in order to afford an opportunity for the development of evidence and proper consideration of the circumstances. As such, Dr. Rashid asserts that the circuit court committed reversible error.

Dr. Tarakji maintains that Dr. Rashid waived his right to challenge the alleged failure to receive notice and the subsequent validity of the dismissal order. He further argues that Dr. Rashid's delay in taking any action following the dismissal serves as an estoppel of his right to raise the issue on appeal. He states that the dismissal order was entered on July 5, 2001, and that there is no factual dispute that counsel for Dr. Rashid became aware of the dismissal of the action in July 2001. Thereafter, Dr. Rashid failed to take advantage of the procedural mechanism for disputing the entry of the dismissal order, including raising any contention that notice was not properly received, and, therefore, has waived any right to dispute the entry of the dismissal order.

We begin by noting that Rule 41(b) does permit West Virginia courts to strike actions from their dockets where there has been no order or proceeding in that action for more than one year. Rule 41(b) provides:

> Involuntary Dismissal; Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits.

> Any court in which is pending an action wherein for more than one year there has been no order or proceeding, or wherein the plaintiff is delinquent in the payment of accrued court costs, may, in its discretion, order such action to be struck from its docket; and it shall thereby be discontinued. The court may direct that such order be published in such newspaper as the court may name. The court may, on motion, reinstate on its trial docket any action dismissed under this rule, and set aside any nonsuit that may be entered by reason of the nonappearance of the plaintiff, within three terms after entry of the order of dismissal or nonsuit; but an order of reinstatement shall not be entered until the accrued costs are paid.

Before a court may dismiss an action under Rule 41(b), notice and an opportunity to be heard must be given to all parties of record.

In Syllabus Point 2 of *McDaniel v. Romano*, 155 W.Va. 875, 190 S.E.2d 8 (1972), this Court stated that "[a]lthough courts should not set aside default judgments or dismissals without good cause, it is the policy of the law to favor the trial of all cases on their merits." This Court also expressed this principle in *Dimon*, wherein we stated: "[W]e recognize that dismissal based on procedural grounds is a severe sanction which runs counter to the general objective of disposing cases on the merit." 198 W.Va. at 45–46, 479 S.E.2d at 344–345. We further explained that because dismissing an action for failure to prosecute is such a harsh sanction, dismissal with prejudice is appropriate only in "flagrant" cases. *Dimon*, 198 W.Va. at 45, 479 S.E.2d at 344.

In Syllabus Point 2 of *Dimon*, we held: "Before a court may dismiss an action under Rule 41(b), notice and an opportunity to be heard must be given to all parties of record. To the extent that *Brent v. Board of Trustees of Davis & Elkins College*, 173 W.Va. 36, 311 S.E.2d 153 (1983), and any of our previous holdings differ with this ruling, they are expressly overruled." Additionally, in Syllabus Point 3 of *Dimon*, we explained:

In carrying out the notice and opportunity to be heard requirements, before a case may be dismissed under Rule 41(b), the following guidelines should be followed: First, when a circuit court is contemplating dismissing an action under Rule 41(b), the court must first send a notice of its intent to do so to all counsel of record and to any parties who have appeared and do not have counsel of record. The notice shall inform that unless the plaintiff shall file and duly serve a motion within fifteen days of the date of the notice, alleging good cause why the action should not be dismissed, then such action will be dismissed, and that such action also will be dismissed unless plaintiff shall request such motion be heard or request a determination without a hearing. Second, any party opposing such motion shall serve upon the court and the opposing counsel a response to such motion within fifteen days of the service of such motion, or appear and resist such motion if it be sooner set for hearing. Third, if no motion is made opposing dismissal, or if a motion is made and is not set for hearing by either party, the court may decide the issue upon the existing record after expiration of the time for serving a motion and any reply. If the motion is made, the court shall decide the motion promptly after the hearing. Fourth, the plaintiff bears the burden of going forward with evidence as to good cause for not dismissing the action; if the plaintiff does come forward with good cause, the burden then shifts to the defendant to show substantial prejudice to it in allowing the case to proceed; if the defendant does show substantial prejudice, then the burden of production shifts to the plaintiff to establish that the proffered good cause outweighs the prejudice to the defendant. Fifth, the court, in weighing the evidence of good cause and substantial prejudice, should also consider (1) the actual amount of time involved in the dormancy of the case, (2) whether the plaintiff made any inquiries to his or her counsel about the status of the case during the period of dormancy, and (3) other relevant factors bearing on good cause and substantial prejudice. Sixth, if a motion opposing dismissal has been served, the court shall make written findings, and issue a written order which, if adverse to the plaintiff, shall be appealable to this Court as a final order; if the order is adverse to the defendant, an appeal on the matter may only be taken in conjunction with the final judgment order terminating the case from the docket. If no motion opposing dismissal has been served, the order need only state the ground for dismissal under Rule 41(b). Seventh, if the plaintiff does not prosecute an appeal of an adverse decision to this Court within the period of time provided by our rules and statutes, the plaintiff may proceed under Rule 41(b)'s three-term rule to seek reinstatement of the case by the circuit court—with the time running from the date the circuit court issued its adverse order. Eighth, should a plaintiff seek reinstatement under Rule 41(b), the burden of going forward with the evidence and the burden of persuasion shall be the same as if the plaintiff had responded to the court's initial notice, and a ruling on reinstatement shall be appealable as previously provided by our rule.

Moreover, in *Covington v. Smith*, 213 W.Va. 309, 582 S.E.2d 756 (2003), we explained that "[i]ntegral to a court's dismissal of a lawsuit under Rule 41(b), the Court directed that parties should be afforded notice of the court's decision to dismiss the action and an opportunity to be heard thereon." 213 W.Va. at 317, 582 S.E.2d at 764. We further explained that, "[d]espite this latitude accorded to circuit court judges, the parties affected by this method of case management are also afforded certain procedural protections to ensure that inactive cases are not perfunctorily dismissed when there exists good cause for such dilatoriness." 213 W.Va. at 318, 582 S.E.2d at 765.

Accordingly, as discussed, in recognition that dismissal of a legal action is a severe penalty, "today, we make explicit that before a court may dismiss an action under Rule 41(b), notice and an opportunity to be heard must be given to all parties of record." *Dimon*, 198 W.Va. at 49, 479 S.E.2d at 348. In this case, the dismissal order was entered on July 5, 2001, and Dr. Rashid's counsel states

that he did not receive the pre-dismissal notice. Counsel for Dr. Tarakji has not indicated to this Court through their briefs or during oral argument whether they received the March 31, 2001, letter.

Our examination of the circuit clerk's docket sheet revealed an entry that was made on March 30, 2001, which simply stated: "Not[ice] of Three Year Rule." There is no indication included on the docket sheet to show to whom such notice was sent. Moreover, a review of the March 30, 2001, letter, leads us to conclude that the circuit court did not comply with the clear mandate of Rule 41(b), which specifically provides that: "Before a court may dismiss an action under Rule 41(b), notice and an opportunity to be heard must be given to all parties of record."

The March 30, 2001, letter, which was sent to counsel for Dr. Rashid and Dr. Tarakji, was sent by the Kanawha County Circuit Clerk and sent at the same time to numerous counsel in more than seventy other legal actions. It provided that pursuant to W.Va. Code § 59-1-11(b), "additional court costs are due in these cases." It further stated: "Please remit the appropriate court costs for your case(s) on or before May 1, 2001, or they will be referred to the court for dismissal pursuant to Rule 41(2)(b) of the Rules of Civil Procedure." With no further correspondence from the circuit court to either party in this case, on July 5, 2001, the circuit court dismissed the legal action as a result of Dr. Rashid's failure to remit twenty dollars to the circuit clerk by the deadline of May 1, 2001.

Upon reviewing the record below, we believe that irrespective of the March 30, 2001, letter from the circuit clerk to both counsel, the letter did not satisfy the clear requirements of Rule 41(b). While the circuit clerk certainly had the authority to send the letter to counsel requesting the payment of fees, the letter does not amount to the required notice and opportunity to be heard. The circuit clerk does not have the authority to dismiss cases from the circuit court's docket for nonpayment of fees, and in this case, she properly fulfilled her statutory duty of refer-

ring the case to the circuit court. The July 5, 2001, circuit court order held,

> This day came the Clerk and reported to the Court the following cases are pending in said Court. Under West Virginia Code § 59-1-11(b)(11), the Clerk is required to demand an additional fee of $20.00 in the below listed cases and the same having been done and the fee not paid, the said cases are hereby ORDERED DISMISSED and retired from the docket with leave to reinstate upon good cause shown.

Upon receiving the July 5, 2001, notice from the circuit clerk that several cases fell under the provisions of Rule 41(b), the circuit court should have provided the proper notice and opportunity to be heard to all counsel of record prior to dismissing the case. *See Dimon*, Syllabus Point 2. It is undisputed that such notice and opportunity were not provided to any party in this case following the circuit clerk's report of those cases to the circuit court. As such, the July 5, 2001, dismissal order was *void ab initio*, and thus, had no legal effect. Accordingly, we remand this case to the circuit court for reinstatement and adjudication of the claim upon its merits.

In summary, after thoroughly reviewing the record, and considering all of the parties' arguments, we reverse the circuit court's September 27, 2006, denial of Dr. Rashid's motion to reinstate his civil action.[3]

## IV.

## CONCLUSION

For the reasons set forth above, the September 27, 2006, final order of the Circuit Court of Kanawha County is reversed, and this case is remanded to the circuit court with directions to enter an order reinstating Dr. Rashid's legal action.

Reversed and Remanded with Directions.

Justice DAVIS and Justice BENJAMIN, deeming themselves disqualified, did not participate in the decision of this case.

---

**3.** Having found that Dr. Rashid's case must be reinstated because the dismissal notice was in-

sufficient, we need not address the other assignments of error.

Justice ALBRIGHT, did not participate in the issuance of this opinion.

Judge WALKER and Senior Status Judge EGNOR sitting by temporary assignment.

Judge WALKER dissents.